IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KIMBERLY MCCOY MILLER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:11-CV-3614-VEH |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Kimberly McCoy Miller ("Ms. Miller") brings this action under 42 U.S.C. § 405(g) (2006), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits

---

[1]The court recently became aware that Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on Mar. 13, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2]  Ms. Miller timely pursued and exhausted her administrative remedies available before the Commissioner.  The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Miller was forty years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 146).  She has completed four years of high school and one year of college.  (Tr. 158).  Her past work experiences include employment as a cashier, hair stylist, waitress, assembler, and welding machine operator.  (Tr. 153).  She claims she became disabled on August 8, 2008, due to severe depression, anxiety, neck pain, and back pain.  (Tr. 152).

On June 10, 2009, Ms. Miller protectively filed a Title II application for a period of disability and DIB.  (Tr. 12).  She also protectively filed a Title XVI application for SSI on that date.  (*Id.*).  On July 15, 2009, the Commissioner initially denied these claims.  (*Id.*).  Ms. Miller timely filed a written request for a hearing on July 27, 2009.  (*Id.*).  The ALJ conducted a hearing on the matter on April 21, 2011.

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

(*Id.*).  On June 3, 2011, he issued his opinion concluding Ms. Miller was not disabled and denying her benefits.  (Tr. 23).  She timely petitioned the Appeals Council to review the decision on June 10, 2011.  (Tr. 7).  On August 16, 2011, the Appeals Council issued a denial of review on her claim.  (Tr. 1-6).

Ms. Miller filed a Complaint with this court on October 12, 2011, seeking review of the Commissioner's determination.  (Doc. 1).  On June 25, 2012, the Commissioner filed a brief supporting the ALJ's decision. (Doc. 8).  Ms. Miller, who elected to proceed *pro se* before this court, did not file any briefing submission on her behalf within the time limit designated by the undersigned.  With the matter thus fully briefed, the court has carefully considered the record and reverses the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

>   (1)   whether the claimant is currently employed;
>   (2)   whether the claimant has a severe impairment;
>   (3)   whether the claimant's impairment meets or equals an impairment listed by the Commissioner;
>   (4)   whether the claimant can perform his or her past work; and
>   (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Miller met the insured status requirements of the Social Security Act through December 31, 2013. (Tr. 14). He also found that Ms. Miller had not engaged in substantial gainful activity since August 8, 2008, the alleged onset date of her disability. (*Id.*). He further concluded that Ms. Miller had depression and anxiety, which qualified as severe impairments. (*Id.*). The ALJ then held that these medically determinable impairments, in combination, did not meet or medically equal one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations. (Tr. 15).

After considering Ms. Miller's stated symptoms and their congruence with the objective medical evidence, the ALJ found that she had the residual functional capacity ("RFC") to perform "light and medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (Tr. 16). However, he added the following limitations to this prescription:

- She would be limited to simple, routine and repetitive tasks.
- She would require non-intense interaction with members of the general public and coworkers.

- Supervision and criticism should be supportive and non-confrontational.
- She would function best with a flexible schedule in a well-spaced work setting.

(*Id.*).  In reaching this determination, the ALJ afforded "great weight" to the assessment of a State Agency psychiatrist who examined Ms. Miller's records.  (Tr. 21).  This expert opined that Ms. Miller was not disabled and that her medical records did not support the presence of sustained marked limitations.  (*Id.*).  In construing her RFC, the ALJ also discredited Ms. Miller's description of the limitations her impairments placed on her functional capacity.  (Tr. 22).  Beyond pointing to several inconsistencies between her testimony and the record, the ALJ also highlighted that Ms. Miller applied for and received state unemployment compensation benefits after her alleged disability onset date.  (*Id.*).  He considered this a "factor to be considered" in evaluating her credibility.  (*Id.*).

The ALJ then concluded that Ms. Miller was capable of performing her past relevant work as a cashier, assembler, and welding machine operator.  (*Id.*).  None of these occupations placed demands on her abilities that surpassed the limitations of her RFC.  (*Id.*).  Given this conclusion, the ALJ found that Ms. Miller was not disabled under the Social Security Act from August 8, 2008, through June 3, 2011, the date of the decision.  (*Id.*).  He thus dismissed her applications for DIB and SSI benefits.  (Tr. 23).

7

## ANALYSIS

**I.    INTRODUCTION**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]  However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

In this case, Ms. Miller argues in her Complaint that the ALJ's decision unjustifiably ignored the incapacitating effects of her various impairments. (Doc. 1 at 2). In response, the Commissioner urges the court to uphold the decision on two grounds: (1) substantial evidence supports the ALJ's RFC determination and (2) substantial evidence supports the ALJ's credibility determination. (Doc. 8 at 12-22). As explained below, the court finds that the ALJ, in formulating his RFC assessment, failed to specify what weight he afforded the opinion of Ms. Miller's treating psychiatrist. Likewise, he incorrectly gave "great weight" to the evaluation of the

---

[5]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

non-examining physician employed by the State Agency. The court will thus remand the case to the Commissioner for proper consideration of the medical opinion evidence.

## II. THE ALJ ERRED IN OMITTING WHAT WEIGHT HE GAVE THE OPINION OF MS. MILLER'S TREATING PHYSICIAN.

In determining Ms. Miller's RFC, the ALJ neglected to state what weight he assigned the opinion of her treating psychiatrist. In failing to do so, he committed legal error that itself mandates remand of the case. The Commissioner must specify what weight is given to a treating physician's opinion and any reason for giving it no weight at all. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) and *Wiggins v. Schweiker*, 679 F.2d 1387, 1389-90 (11th Cir. 1982)). Failure to do so is reversible error. *Id.* (citations omitted).

In this case, Ms. Miller submitted treatment records and correspondence authored by Dr. Daniel Meadows, Jr., M.D., a psychiatrist who then worked for Alabama Psychiatric Services. (Tr. 273-284). Dr. Meadows began treating her on February 3, 2009. (Tr. 281). In a September 26, 2010, letter addressed to Ms. Miller's attorney, Dr. Meadows recorded that he originally diagnosed Ms. Miller with major depression and anxiety. (*Id.*). He changed his primary diagnosis to bipolar

type II after Ms. Miller developed symptoms of mood cycling during the course of the treatment. (*Id.*). Moreover, while he did not formally diagnose her with generalized anxiety disorder, he acknowledged that she continued to have significant anxiety and may well qualify for such a diagnosis. (*Id.*). He further observed that Ms. Miller had significant levels of pain and suggested that fibromyalgia was a possible cause. (*Id.*). While she was not currently exhibiting such issues, she had previously suffered numerous side effects from the medication she was taking during the treatment period. (*Id.*). Dr. Meadows then gave the following overview of Ms. Miller's condition and functional capacity:

> In my view, Ms. Miller's illnesses are the [sic] chronic nature and is [sic] likely to cause periodic worsening that would impair her ability to work. Certainly in spells of significant depression, her energy and focus would likely be impaired enough that taking her off work could occur. During spells of mania, her interpersonal skills could be substantially reduced. Throughout my care of Ms. Miller, her concentration has always been significantly impaired and this could cause sustained problems while she is trying to attend to the duties of any job . . . [I]rritability, which is probably multifactorial, puts Ms. Miller in a situation that she should avoid work really to protect herself and to protect others. I think that Ms. Miller's rather anxious style and her proneness perhaps to make errors because of her inability to focus make her a target from authority figures or co-workers to make derogatory comments. This actually tends to set a cycle in motion of comments, increased irritability, etc. which is also obviously not good in the workplace.
>
> At this point, I do not think Ms. Miller can endure the stress of a typical work situation without significant decompensation in her pain and mood. I further think Ms. Miller's rather impaired concentration makes her rather marginal in her ability to work even when her mood is good and she is not too

irritable. I expect this state to last indefinitely, certainly greater than 12 months, and it is very likely permanent.

(*Id.*). Additionally, on September 27, 2010, Dr. Meadows wrote a letter to Ms. Miller's then-employer excusing her from work "related to illness until further notice." (Tr. 284).

The ALJ acknowledged this opinion evidence and recited it in detail. (Tr. 19-20). However, he did not record how the evidence weighed in his decision. In fact, his only editorial comments on it were that (1) he was unable to read many of the notes in Dr. Meadows's treatment records because they were blocked out, (2) Dr. Meadows's treating relationship with Ms. Miller was "quite brief," and (3) it was unclear whether Dr. Meadows considered Ms. Miller "disabled" in the strict sense intended by the Social Security Act and its regulations. (*Id.*). These observations may have been legitimate. But they insufficiently inform this court of the relative influence Dr. Meadows's opinion played in the ALJ's decision to find Ms. Miller "not disabled." Without such direction, this court is simply unable to exercise judicial review. *See Wiggins*, 679 F.2d at 1390 ("If we are to provide the parties with any sort of meaningful judicial review, we must be able to ascertain whether the ALJ correctly followed the law.").

### III. THE ALJ THUS WRONGLY GAVE "GREAT WEIGHT" TO THE ASSESSMENT OF A NON-EXAMINING PHYSICIAN.

The ALJ compounded his error by lending "great weight" to the opinion of the non-examining physician employed by the State Agency. "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) (citing 20 C.F.R. § 404.1526 (1980)) (footnote omitted).[6] However, when an examining physician's assessment is backed by the evidence, the contrary opinion of a non-examining, reviewing physician is entitled to little weight. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). Indeed, "reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision." *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam) (citations omitted).

The ALJ's decision here to confer great weight to the State Agency physician's opinion was not itself a legal error, as the opinion was not the exclusive basis of his RFC determination. He referenced other factors driving his analysis. These include: inconsistencies in Ms. Miller's testimony, insufficient diagnostic corroboration of her asserted chronic neck and back pain, and her application for state unemployment

---

[6]This decision is binding in this Circuit. *See* note 5, *supra*.

compensation benefits during her claimed disability period. (Tr. 22). However, privileging the Stage Agency physician's opinion became legal error when joined with the ALJ's failure to assign any formal weight to Dr. Meadows's opinion. This action effectively discredited the latter's opinion in favor of the former. If an ALJ wishes to discredit a treating physician's opinion – which otherwise merits considerable weight – then he or she must provide "good cause" to do so. *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). As noted, the ALJ here did not even attempt to articulate good cause, much less substantiate it.

With these observations in mind, the court finds that the ALJ wrongly omitted what weight he assigned Dr. Meadows's medical opinion and, in turn, unjustifiably gave "great weight" to that of the State Agency physician.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner did not apply proper legal standards in reaching his final decision. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this 19th day of March, 2013.





Case 5:11-cv-03614-VEH   Document 9   Filed 03/19/13   Page 13 of 14

compensation benefits during her claimed disability period. (Tr. 22). However, privileging the Stage Agency physician's opinion became legal error when joined with the ALJ's failure to assign any formal weight to Dr. Meadows's opinion. This action effectively discredited the latter's opinion in favor of the former. If an ALJ wishes to discredit a treating physician's opinion – which otherwise merits considerable weight – then he or she must provide "good cause" to do so. *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). As noted, the ALJ here did not even attempt to articulate good cause, much less substantiate it.

With these observations in mind, the court finds that the ALJ wrongly omitted what weight he assigned Dr. Meadows's medical opinion and, in turn, unjustifiably gave "great weight" to that of the State Agency physician.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner did not apply proper legal standards in reaching his final decision. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this 19th day of March, 2013.

/s/ Virginia Emerson Hopkins
**VIRGINIA EMERSON HOPKINS**
United States District Judge